**DEREK SMITH LAW GROUP, PLLC**
TIMOTHY J. PROL, ESQUIRE
Attorney ID No. 319524
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(267) 857-0834
tim@dereksmithlaw.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Delaware County Prison Employees Independent Union<br><br>               Plaintiff,<br><br>    v.<br><br>Delaware County Pennsylvania<br><br>Jail Oversight Board of Delaware County Pennsylvania<br><br>George W. Hill Correctional Facility<br><br>Kevin Madden, individually and in his official capacity as Delaware County Councilman and Chair of the Jail Oversight Board<br><br>Laura Williams, Warden - individually and in her official capacity as chief administrator of the George W. Hill Correctional Facility<br><br>Cheyenne Marquette, individually and in her official capacity as Human Resources Manager of the George W. Hill Correctional Facility<br><br><br>               Defendants. | Civil Action No.<br><br>**CIVIL ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

PLAINTIFFS, by and through their attorneys, The Derek Smith Law Group, PLLC, hereby bring this civil action pursuant to 42 U.S.C. § 1983 and § 1988 for monetary, declaratory, and injunctive relief. This is a complaint for damages based upon federal civil rights violations and retaliation by DEFENDANTS against PLAINTIFFS. DEFENDANTS, acting under color of State law, systematically and on a sustained basis violated PLAINTIFFS' rights under the First, Fifth, and Fourteenth Amendments. PLAINTIFFS allege and aver in support thereof:

## NATURE OF THE CASE

1.      This action arises out of the unlawful and hostile violation of the rights   of PLAINTIFF'S Members under the First, Fifth, and Fourteenth Amendments by DEFENDANTS since DEFENDANTS subjected, and/or caused to be subjected, PLAINTIFFS' Members, and by extension PLAINTIFFS to the deprivation of myriad rights, privileges, and immunities secured by the Constitution and laws as set forth more fully below.

2.      By terminating Frank Kwaning, Ashley Gwaku, Kenneth Demonfonte, Najah Branham, Ian Lofton, Morris Maanneh, Abdoul Diallo, Dejah Henry, Malverna Hymann, Francisca Veney, Nathaniel Savage, Charles Sevor, Onyx Robinson, and Matthew Wiedman by refusing, failing, and neglecting to "hire" them in the positions they held in good standing prior to the jail's day-to-day functions being re-assumed by Delaware County, DEFENDANTS deprived them of their Constitutional rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

3.      Further, DEFENDANTS materially negatively impacted Union operations and actions by terminating the President and Vice President of the Union, Kwaning and Gwaku, and by preventing them from representing Union Members on jail grounds.

4.      By refusing, failing, and neglecting to allow Plaintiff Kwaning and Plaintiff Gwaku on the premises of the George W. Hill Correctional Facility, DEFENDANTS deprived them and DCPEIU of their Constitutional right to freedom of speech, freedom of association, and freedom to petition the government under the First Amendment of the United States Constitution.

5.      By refusing, failing, and neglecting to deduct dues from DCPEIU Members, even after receiving more than one hundred (more than 100) signed cards directing her to do so, DEFENDANTS deprived them of their Constitutional right to freedom of speech, freedom of association, and freedom to petition under the First Amendment of the United States Constitution.

6.      PLAINTIFFS bring this action charging that DEFENDANTS violated PLAINTIFFS' rights and PLAINTIFFS' Members rights pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, seeking damages to redress the injuries PLAINTIFFS and their Members suffered as a result of being wrongfully and unlawfully deprived of their constitutional rights by DEFENDANTS.

**PARTIES**

7.      PLAINTIFF Delaware County Prison Employees Independent Union (DCPEIU) is an employe organization under the laws of the Commonwealth of Pennsylvania, specifically Section 301(3) of PERA.

8.     Members of DCPEIU include Corrections Officers currently and formerly employed by DEFENDANT Delaware County as well as Corrections Officers formerly employed by DEFENDANT Delaware County through private subcontracting with Community Education Centers, Inc./The Geo Group.

9.     PLAINTIFFS' Members are citizens or residents of the United States of America and of the Commonwealth of Pennsylvania who have wrongfully been deprived of their civil rights under the First, Fifth, and Fourteenth Amendments to the Constitution of the United States as a direct and proximate result of DEFENDANTS' official, targeted, and sustained actions. Since there are a substantial number of individuals negatively impacted by the unlawful actions of DEFENDANTS in this matter, Plaintiff will seek to amend this Complaint with additional Plaintiffs pursuant to F.R.C.P. 15 if, and as, they become identified and available.

10.     As set forth more fully below, DCPEIU Members have legally protected interests, namely due process, free speech, and other rights under the United States Constitution, and have been injured by Defendants.

11.     The conduct engaged in by Defendants directly caused the injuries which have been and are being suffered by DCPEIU Members.

12.     A favorable decision herein will redress the injuries by remedying the damage done to DCPEIU Members and will prevent further injury and damages from being imposed upon DCPEIU Members by Defendants.

13.     By enforcing the rights of DCPEIU Members, DCPEIU, which has itself been injured by Defendants' unlawful actions, will be unhindered in its service to its Members.

14.     DEFENDANT Delaware County is a public entity duly organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with a business address at 201 West Front Street, Media, PA 19063.

15.     DEFENDANT Delaware County and its Council are empowered by Commonwealth of Pennsylvania law to operate and maintain the George Hill Correctional Facility located in Delaware County, PA.

16.     DEFENDANT Jail Oversight Board of Delaware County Pennsylvania (hereafter Jail Oversight Board or "JOB"), is located at 500 Cheyney Road Thornton, PA 19373 and has a mailing address of P.O. Box 23 Thornton, PA 19373.

17.     Chapter 86 of the Delaware County Code establishes and details the Jail Oversight Board, its scope, composition, powers and duties, and enumerates other administrative powers.

18.     The Jail Oversight Board is established according to the provisions of Title 61, Subchapter B, of the Pennsylvania Consolidated Statutes via Resolution No. 2019-12.

19.     The Jail Oversight Board's administrative powers and duties include the operation and maintenance of the George Hill Correctional Facility (the "jail") and all associated alternative housing facilities, the oversight of the health and safekeeping of inmates and the confirmation of the Executive Director's selection of a Warden.

20.     The Jail Oversight Board's operations are required to be consistent with law.

21.     The Jail Oversight Board is required to ensure that the jail is being operated in accordance with its regulations and the laws and regulations of the Commonwealth of Pennsylvania and of the United States of America.

22.    DEFENDANT George W. Hill Correctional Facility is the county correctional center for Delaware County, PA.

23.    DEFENDANT George W. Hill Correctional Facility is the primary facility where adults are held after arrest, while awaiting trial, or when serving a county sentence of fewer than two (2) years.

24.    DEFENDANT George W. Hill Correctional Facility is owned and operated by DEFENDANT Delaware County.

25.    At all times relevant, DEFENDANT Kevin Madden (hereafter DEFENDANT Madden) is on the County Council and is Chairman of the Jail Oversight Board.

26.    DEFENDANT Madden, as Chair of the Jail Oversight Board, had policymaking authority over DEFENDANT Williams and others, including Corrections Officers, staff, and administration in the George W. Hill Correctional Facility.

27.    DEFENDANT Laura Williams (hereafter DEFENDANT Williams) is the Warden of the George W. Hill Correctional Facility.

28.    At all times relevant, DEFENDANT Williams was empowered by the County of Delaware to enforce law, rules, regulations, policies, and procedures in the George W. Hill Correctional Facility.

29.    At all times relevant, DEFENDANT Williams was empowered to take official state action in her day-to-day tasks which included the administration and operation of the George W. Hill Correctional Facility.

30.     At all times relevant, DEFENDANT Williams took the actions she took as part of her professional duties and responsibilities.

31.     At all times relevant, the Commonwealth of Pennsylvania, through the authority of the Delaware County Commissioners, bestowed a mantle of authority upon DEFENDANT Williams that enhanced the power of her actions.

32.     At all times relevant, DEFENDANT Williams was an official of DEFENDANT Delaware County Pennsylvania and was acting under color of state law.

33.     At all times relevant, DEFENDANT Williams performed her actions against Plaintiffs and their Members while clothed with the authority of the state.

34.     At all times relevant, DEFENDANT Williams was acting in her official capacity and/or while exercising her responsibilities pursuant to state law.

35.     At all times relevant, DEFENDANT Williams was acting for work-related reasons.

36.     At all times relevant, DEFENDANT Williams's actions were related to her job as a government official.

37.     At all times relevant, DEFENDANT Williams's actions took place within the geographic area covered by DEFENDANT Williams's department.

38.     At all times relevant, DEFENDANT Williams used her official position to exert influence over the Plaintiffs and their Members.

39.     DEFENDANT Cheyenne Marquette (hereafter DEFENDANT Marquette) is the Human Resources Manager or Coordinator of the George W. Hill Correctional Facility.

40.     At all times relevant, DEFENDANT Marquette was empowered by Defendants to enact and carry out the official policies, procedures, official personnel actions, and all human resources activities in the George W. Hill Correctional Facility.

41.     At all times relevant, DEFENDANT Marquette was empowered to take official state action in her day-to-day tasks which included the administration and operation of the human resources and personnel operations of the George W. Hill Correctional Facility.

42.     At all times relevant, DEFENDANT Marquette took the actions she took as part of her professional duties and responsibilities.

43.     At all times relevant, the Commonwealth of Pennsylvania, through the authority of the Delaware County Commissioners and through Defendants Madden and Williams bestowed a mantle of authority upon DEFENDANT Marquette that enhanced the power of her actions.

44.     At all times relevant, DEFENDANT Marquette was an official of DEFENDANT Delaware County Pennsylvania and was acting under color of state law.

45.     At all times relevant, DEFENDANT Marquette performed her actions against Plaintiffs and their Members while clothed with the authority of the state.

46.     At all times relevant, DEFENDANT Marquette was acting in her official capacity and/or while exercising her responsibilities pursuant to state law.

47.     At all times relevant, DEFENDANT Marquette was acting for work-related reasons.

48.     At all times relevant, DEFENDANT Marquette's actions were related to her job as a government official.

49.     At all times relevant, DEFENDANT Marquette's actions took place within the geographic area covered by DEFENDANT Marquette's department.

50.     At all times relevant, DEFENDANT Marquette used her official position to exert influence over the Plaintiffs and their Members.

## JURISDICTION AND VENUE

51.     This Court has subject matter jurisdiction over this matter as it involves a Federal Question under 42 U.S.C. §1983 and §1988. Jurisdiction is proper in the Eastern District of Pennsylvania based upon 28 U. S.C. §1331 and § 1343 (1-4).

52.     Venue is appropriate before this Court as Defendants reside in the Eastern District of Pennsylvania and all actions and omissions giving rise to this litigation occurred in the Eastern District of Pennsylvania.

## MATERIAL FACTS

53.     George W. Hill Correctional Facility is a publicly funded jail in Delaware County Pennsylvania.

54.     The Warden of the George W. Hill Correctional Facility is appointed by the Delaware County Executive Director and is confirmed by the Jail Oversight Board.

55.     The Warden serves at the pleasure of the County Executive Director and the County Executive Director fixes the Warden's annual salary at a level deemed appropriate by the County Executive Director.

56.     The Warden reports to the Delaware County Executive Director and to the Jail Oversight Board.

57.     The Warden is required by law to give annual and monthly reports to the Jail Oversight Board regarding the population, conditions and practices in the jail and other matters as specified by the Board.

58.     From about 1998 to 2022 the public services of the George W. Hill Correctional Facility in Delaware County Pennsylvania were under private administration by Community Education Centers, Inc./The Geo Group (hereafter referred to as "Geo" or "Geo Group").

59.     Prior to 1998 when Geo assumed control of the public administrative functions of the jail, the jail was administered directly by Delaware County, Pennsylvania.

60.     The George W. Hill Correctional Facility under Geo's management employed around three-hundred-eight (308) Corrections Officers.

61.     The Collective Bargaining Unit of the Corrections Officers of the George W. Hill Correctional Facility is the Delaware County Prison Employees Independent Union (hereafter referred to as "Union" or "DCPEIU").

62.     Prior to Geo's management and administration of the George W. Hill Correctional Facility on behalf of Delaware County Pennsylvania, a Collective Bargaining Agreement (CBA) existed between DCPEIU and Delaware County.

63.     For the duration of Geo's operation of the George W. Hill Correctional Facility on behalf of Delaware County Pennsylvania, a Collective Bargaining Agreement (CBA) existed between Geo and DCPEIU, with the most recent incarnation of that agreement covering the years 2017 through 2020.

64.     The CBA outlines the terms and conditions of employment for the Correctional Officers of the George W. Hill Correctional Facility.

65.     In addition to outlining the terms and conditions of employment, including recognition of DCPEIU as the exclusive collective bargaining representative for all full-time and regular part-time Correctional Officers employed by Geo at the George W. Hill Correctional

Facility, outlining the working hours, overtime provisions, paid time off, grievance procedures, among others, the CBA contained a provision which provides as follows:

ARTICLE 28. TERM

28.1 Except as otherwise provided herein, this Agreement becomes effective January 1, 2027 and shall continue in force and effect until midnight December 31, 2019 and from year to year thereafter unless either party receives written notice from the other party, not less than sixty (60) days, nor more than ninety (90) days, immediately prior to the expiration date, of its intention to amend, modify or terminate this Agreement, provided that if the Company shall cease to operate at this site, this Agreement shall automatically terminate and the rights and obligations of both the Union and the Company hereunder shall automatically cease, except with reference to those Officers covered herein shall remain in the employment of the Company for the purpose of performing work arising from the termination provisions of the Company's agreement with the Client, and as to such Officers, this Agreement shall continue in effect until termination of employment of such Officers.

66.     On about April 6, 2022, Delaware County Pennsylvania re-assumed direct control of the George W. Hill Correctional Facility.

67.     By re-assuming direct control of the George W. Hill Correctional Facility, Delaware County assumed the management functions of the jail.

68.     On about January 31, 2022, the County Commissioners appointed Defendant Williams to serve as Warden of the George W. Hill Correctional Facility.

**TERMINATION OF EMPLOYEES WITHOUT DUE PROCESS:**

69.     Upon re-assuming direct control of the Jail and assuming operational responsibilities, Defendants, led by DEFENDANT Williams, systematically targeted roughly sixty-eight (68) individuals who they terminated absent any notice, hearing, charge, or due process whatsoever.

70.     The individuals terminated by Defendants were all employees in good standing, meaning no employee was facing a disciplinary sanction that would have led to or supported termination.

71.     Where an employee of a private company subcontracted by a public entity to perform a public service have a "just cause" termination clause in their collective bargaining agreement (CBA), those employees have a due process property interest in their jobs and may not be terminated absent notice and opportunity to be heard. *Atterbury v. United States Marshals Serv*., 941 F.3d 56 (2d Cir. 2019).

72.     The CBA between Geo and DCPEIU provided in relevant part as follows:

ARTICLE 13. JUST CAUSE
...
13.02 No employee shall be discharged, disciplined, or demoted without just cause. The Company shall provide the Union a copy of any disciplinary action taken against an officer.

73.     The CBA between Geo and DCPEIU also provides that the principles of Progressive Discipline will be adhered to.

74.     In matters of public employment in the Commonwealth of Pennsylvania there exists a duty, which includes a public sector union performing a public service on behalf of a public entity which subcontracts those public duties to a private company, to maintain the status quo when a CBA expires and no successor agreement is in place. *Luzerne Intermediate Unit No. 18 v. Luzerne Intermediate Unit Education Association*, 89 A.3d 319 (Pa. Cmwlth. 2014), *citing Fairview School District v. Unemployment Compensation Board of Review*, 499 Pa. 539, 454 A.2d 517, 521 (Pa. 1982) ("The underlying rationale for the status quo requirement is that during the interim period between contracts, the employer may continue operations and the employee may

continue working, while the parties are free to negotiate on an equal basis in good faith. Maintenance of the status quo is merely another way of stating that the parties must continue the existing relationship in effect at the expiration of the old contract.") *See also Philadelphia Fed'n of Tchrs. v. Sch. Dist. of Philadelphia*, 109 A.3d 298 (Pa. Commw. Ct. 2015), aff'd on other grounds sub nom. *Philadelphia Fed'n of Tchrs., AFT, Loc. 3, AFL-CIO v. Sch. Dist. of Philadelphia*, 636 Pa. 484, 144 A.3d 1281 (2016).

75.    Accordingly, Plaintiffs' Members possess and possessed a legitimate claim of entitlement to continued employment with Delaware County and the George W. Hill Correctional Facility and were entitled to due process which they did not receive. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).

76.    When DEFENDANT Williams began her tenure as Warden, she unilaterally repudiated the standing contract between DCPEIU and Geo despite the status quo requiring the terms and conditions of employment to continue despite the termination of the previous CBA.

77.    Kwaning was one such individual who was an employee in good standing and was not facing any disciplinary sanctions.

78.    Kwaning was a fourteen (14) year veteran Correctional Officer with the George W. Hill Correctional Facility.

79.    In his fourteen (14) year career, Kwaning did not have any violations of rules, regulations, policies, or procedures until the very end of Geo's administration of the jail, when he was disciplined for inadvertently bringing headache medicine for a headache he was having into the jail.

80.    For that first infraction in his career he received a ten (10) days suspension but served the entirety thereof and was returned to full active duty in good standing.

81.     Gwaku was another such individual who, although receiving a disciplinary sanction at the end of Geo's tenure of operation, was an employee in good standing and was not facing any disciplinary sanctions yet was terminated by Defendants without any due process or hearing of any sort.

82.     Similarly, Demonfonte, Branham, Lofton, Maanneh, Diallo, Henry, Hymann, Amouzou, Veney, Savage, Sevor, Robinson, and Wiedman all had previous discipline ranging in duration, but common to all Plaintiffs is the fact that they were all in good standing while working for GEO and were all in good standing when GEO's operation of the jail was ended by Defendants.

83.     Termination of employees in good standing without constitutionally-required due process runs contrary to law, policy, and to the principles of progressive discipline.

**FREE SPEECH, ASSOCIATION, PETITION – ON BEHALF OF PRESIDENT KWANING AND VICE PRESIDENT GWAKU:**

84.     Following the termination without due process of roughly sixty-eight (68) George W. Hill Correctional Facility Employees, twenty-nine (29) of whom were active and participatory Union Members, DCPEIU President Plaintiff Kwaning and Vice President Plaintiff Gwaku were summarily prohibited, along with other terminated individuals removed without due process, from setting foot on the grounds of the George W. Hill Correctional Facility.

85.     Union representatives have free speech, association, and the right to petition the government. *Palardy v. Twp. of Millburn*, 906 F.3d 76 (3d Cir. 2018), See also Baloga v. Pittston Area Sch. Dist., 927 F.3d 742 (3d Cir. 2019).

86. This necessarily requires access to the employees of the George W. Hill Correctional Facility, access to the grounds of the George W. Hill Correctional Facility, and in the case of any disciplinary proceedings that do or did occur, the ability to represent Members in those proceedings even if those proceedings occurred on George W. Hill Correctional Facility and even if Kawnning and Gwaku had been terminated by Defendants.

87. Yet Defendants failed to allow Plaintiffs Kwaning and Gwaku to represent their members in any way, shape, or form on George W. Hill Correctional Facility property from about April, 2022 until about August, 2023.

88. Multiple times on a repeated, systematic, and sustained basis, on specific dates and times spanning from about April, 2022 until about August, 2023, Defendants prohibited Plaintiffs Kwaning and Gwaku from representing Union Members in disciplinary proceedings and from speaking on behalf of Members of DCPEIU.

89. Plaintiffs Kwaning and Gwaku repeatedly attempted to exercise their free speech, association, and petition rights and were systematically, deliberately, and continuously prevented from doing so.

90. This not only infringed on Plaintiffs Kwaning and Gwaku's rights but also materially injured the Members of DCPEIU since they were unable to avail themselves of their selected choice of Union representative.

91. DEFENDANTS' actions in prohibiting Plaintiffs Kwaning and Gwaku to represent DCPEIU Members further infringed on DCPEIU Member's *Weingarten* and *Loudermill* rights.

92. DEFENDANT Williams personally expressed her instituted policy that Plaintiffs Kwaning and Gwaku were not to be permitted on Correctional Facility premesis to represent Members of DCPEIU.

93.     DEFENDANT Williams' instituted policies were further carried out by DEFENDANT Marquette.

94.     For the time period of about April, 2022 until about August, 2023, Kwaning and Gwaku, despite their positions as President and Vice President of DCPEIU, were prohibited from representing Union Members in disciplinary proceedings or from accessing any of the Union-related areas such as bulletin boards of the George W. Hill Correctional Facility.

**FREE SPEECH – REFUSING TO COLLECT AND REMIT UNION DUES:**

1.  DCPEIU is the lawful and recognized majority bargaining organization for Delaware County Pennsylvania Corrections Officers.

2.  Immediately upon assuming control of the jail in about April, 2022, Defendants by-and-through the actions of DEFENDANT Williams unilaterally and impermissibly ceased collecting dues from DCPEIU Members despite these individuals being active dues-paying Members of the Delaware County Prison Employees Independent Union.

3.  Union Leadership repeatedly and consistently informed Defendants that this was a violation of Union Members' Rights yet Defendants persisted in violating those rights by refusing to deduct dues from DCPEIU Members and remitting them to the Union.

4.  Union Members signed around one-hundred-fifty (150) dues election cards directing Defendants to deduct dues on behalf of DCPEIU. (Exhibit A).

5.  These tactics were deliberately designed to weaken and attrit the Union to harm DCPEIU, its Members, and all Corrections Officers working at the George W. Hill Correctional Facility.

6.      These tactics irreparably harmed DCPEIU, its Members, and all Corrections Officers working at the George W. Hill Correctional Facility by making it difficult and in some cases impossible for the Union to counteract Defendants' unlawful actions and violations.

7.      In the context of Union membership, dues from Members constitutes an exercise of those Members' free speech rights. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2492, 201 L. Ed. 2d 924 (2018).

8.      In response to Defendants' continued refusal to deduct dues from Members who had elected to provide same to the Union, the Union circulated Election Cards to Membership (Attached as Exhibit B) which allowed DCPEIU Members to direct Defendants to honor their desire to have Defendants deduct dues and remit same to the Union.

9.      Still, even after additional Election Cards were submitted to Defendants expressing Members' desire to have their free speech heard by paying dues to DCPEIU, Defendants persisted in violating those directives and free speech rights.

**DEFENDANTS' KNOWLEDGE, PARTICIPATION, AND INDIFFERENCE TO DEFENDANT WILLIAMS' AND HER SUBORDINATES' ACTIONS:**

10.      DEFENDANT Madden had actual knowledge of DEFENDANT Williams's violation of Plaintiffs' rights and DEFENDANT Madden acquiesced in those violations directly or by his inaction to prevent further violations of law and of the Constitution of the United States.

11.      DEFENDANT Madden acted with deliberate indifference to the consequences of DEFENDANT Williams's actions.

12.      DEFENDANT Madden, established and maintained a policy , practice or custom which directly caused the violation.

13.     DEFENDANT Madden has supervisory authority over DEFENDANT Williams and in his position as Chair of the Jail Oversight Board has influence and authority over DEFENDANT Jail Oversight Board and DEFENDANT George W. Hill Correctional Facility.

14.     DEFENDANT Madden was aware of DEFENDANT Williams's conduct and actions in her capacity as Warden of the George W. Hill Correctional Facility.

15.     DEFENDANT Williams made monthly reports to the Jail Oversight Board updating the Board Members and Council as a whole through the Jail Oversight Board of the actions she took as Warden of George W. Hill Correctional Facility.

16.     DEFENDANT Madden acquiesced to DEFENDANT Williams's actions at the jail.

17.     DEFENDANT Madden acquiesced to DEFENDANT Williams's actions in terminating the employment of Plaintiffs Kwaning, Gwaku, Demonfonte, Branham, Lofton, Maanneh, Diallo, Henry, Hymann, Amouzou, Veney, Savage, Sevor, Robinson, and Wiedman.

18.     DEFENDANT Madden acquiesced to DEFENDANT Williams's actions in failing and refusing to collect dues from DCPEIU Members despite the Members providing DEFENDANTS with signed cards electing to have dues taken from their paychecks and remitted to DCPEIU.

19.     DEFENDANT Madden failed to institute any policy, training, or regulation which would have prevented DEFENDANT Williams from violating Plaintiffs' rights.

20.     DEFENDANT Madden, Defendant Jail Oversight Board, Defendant George W. Hill Correctional Facility, and Defendant Delaware County's failure to institute a policy which enforced adherence to contractual provisions, norms, and laws of both the Commonwealth of Pennsylvania and of the United States of America involving the protection of public employees,

including but not limited to adherence to the "status quo" doctrine, created an unreasonable risk that Plaintiff's constitutional due process protections would be violated.

21.     DEFENDANT Madden, Defendant Jail Oversight Board, Defendant George W. Hill Correctional Facility, and Defendant Delaware County's failure to institute a policy which enforced adherence to principles and laws involving Union rights, including Freedom of Speech, Freedom of Association, Freedom to Petition the Government, allowing Union Members to pay dues to a Union, and rights of Union representatives to represent and defend Union Members in administrative proceedings and to intercede on their behalf created an unreasonable risk that Plaintiff's constitutional rights under the First Amendment would be violated.

22.     DEFENDANT Madden, Defendant Jail Oversight Board, Defendant George W. Hill Correctional Facility, and DEFENDANT Delaware County never indicated at any meeting or in any report that they had concerns regarding the constitutionality of jail policies as it pertained to DCPEIU Members and George W. Hill Correctional Facility employees and as such were deliberately indifferent to the risk of violation of Plaintiffs' constitutional rights that a failure to adopt, implement, and adhere to such a policy would cause.

23.     Plaintiff's constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution were violated as a direct and proximate result of DEFENDANT Madden's failure to implement necessary and proper policies.

24.     DEFENDANT Madden was well-apprised of DEFENDANT Williams's actions at all times.

25.     DEFENDANT Williams made regular monthly reports to the Jail Oversight Board and had regular discussions with DEFENDANT Madden throughout her time leading up to her appointment as well as while she served as Warden during all times relevant to this matter.

26.     In these conversations, DEFENDANT Williams relayed her plans and actions regarding staffing, interactions with the Union, disciplinary matters, and discussed same with DEFENDANT Madden.

27.     DEFENDANT Madden in turn discussed these plans, actions, and administrative functions, which included terminating Plaintiffs Kwaning, Gwaku, Demonfonte, Branham, Lofton, Maanneh, Diallo, Henry, Hymann, Amouzou, Veney, Savage, Sevor, Robinson, and Wiedman and which included refusing and failing to collect dues as directed by DCPEIU Members.

28.     At all times relevant, DEFENDANT Madden was aware of DEFENDANT Williams's actions and approved thereof.

29.     At all times relevant, DEFENDANT Madden directly participated in DEFENDANT Williams' actions and was in close contact with DEFENDANT Williams regarding the actions she was taking against Union Members and George W. Hill Correctional Facility employees.

30.     DEFENDANT Delaware County maintained a custom of deficient hiring and staffing policies and practices in that no policies existed to protect the due process rights of public employees performing the public service of Corrections which had been subcontracted to Geo when those services were re-assumed by Delaware County directly.

31.     DEFENDANT Delaware County maintained a lack of an adequate training program for upper-level management regarding constitutional protections for public employees.

32.     DEFENDANT Delaware County maintained a lack of an adequate training policy to address labor-management issues, contractual requirements, and constitutional protections.

33.     DEFENDANT Delaware County maintained a lack of established protocols to ensure lawful labor-management relations.

34.     DEFENDANT Delaware County was aware that no policies existed to address staffing in the transition from GEO's managerial control to Delaware County's managerial control.

35.     DEFENDANT Delaware County was aware that no policies existed to train upper-level management staff, such as DEFENDANT Williams, in labor-management relations, contract law principles (including the status quo doctrine), and constitutional rights and liberties enjoyed by public employees in the Commonwealth of Pennsylvania and United States of America.

36.     DEFENDANT Delaware County did not enact policies to address due process rights of public employees.

37.     DEFENDANT Delaware County did not enact policies to ensure that administrators of the George W. Hill Correctional Facility were properly versed in the principles of progressive discipline.

38.     DEFENDANT Delaware County did not modify any existing county policies to include protections against violations of public employees', specifically Corrections Officers at the George W. Hill Correctional Facility, constitutional rights to due process, freedom of speech, freedom of association, and freedom to petition the government under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

39.     The failure of Delaware County to enact any policies to include protections against violations of public employees', specifically Corrections Officers at the George W. Hill Correctional Facility, constitutional rights to due process, freedom of speech, freedom of association, and freedom to petition the government under the First, Fifth, and Fourteenth

Amendments to the United States Constitution directly and proximately resulted in the violations of Plaintiffs' rights implemented in her official capacity by DEFENDANT Williams.

40.     Defendant Delaware County, which is organized and incorporated under the laws of the Commonwealth of Pennsylvania and is subject thereto, was aware that policies and procedures for the operation and implementation of the George W. Hill Correctional Facility were necessary and required as a matter of law.

41.     DEFENDANT Delaware County was deliberately indifferent to the lack of these policies, as evidenced by the utter lack of discussion, inquiry, investigation, or oversight directed at DEFENDANT Williams and the lack of discussion in DEFENDANT Williams's reports to the County and to the Jail Oversight Board.

42.     The lack of adequate hiring and staffing policies and practices was known by DEFENDANT Delaware County but was not corrected despite the probability of harm to the constitutional rights of Corrections Officers at the George W. Hill Correctional Facility likely being infringed by the lack thereof.

43.     Defendant Jail Oversight Board maintained a custom of deficient hiring and staffing policies and practices in that no policies existed to protect the due process rights of public employees performing the public service of Corrections which had been subcontracted to Geo when those services were re-assumed by Delaware County.

44.     Defendant Jail Oversight Board maintained a lack of an adequate training program for upper-level management regarding constitutional protections for public employees.

45.     Defendant Jail Oversight Board maintained a lack of an adequate training policy to address labor-management issues, contractual requirements, and constitutional protections.

46.     Defendant Jail Oversight Board maintained a lack of established protocols to ensure lawful labor-management relations.

47.     Defendant Jail Oversight Board was aware that no policies existed to address staffing in the transition from GEO's managerial control to Delaware County's managerial control.

48.     Defendant Jail Oversight Board was aware that no policies existed to train upper-level management staff, such as DEFENDANT Williams, in labor-management relations, contract law principles (including the status quo doctrine), and constitutional rights and liberties enjoyed by public employees in the Commonwealth of Pennsylvania and United States of America.

49.     Defendant Jail Oversight Board did not enact policies to address due process rights of public employees.

50.     Defendant Jail Oversight Board did not enact policies to ensure that administrators of the George W. Hill Correctional Facility were properly versed in the principles of progressive discipline.

51.     Defendant Jail Oversight Board did not modify any existing county policies to include protections against violations of public employees', specifically Corrections Officers at the George W. Hill Correctional Facility, constitutional rights to due process, freedom of speech, freedom of association, and freedom to petition the government under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

52.     The failure of the Jail Oversight Board to enact any policies to include protections against violations of public employees', specifically Corrections Officers at the George W. Hill Correctional Facility, constitutional rights to due process, freedom of speech, freedom of association, and freedom to petition the government under the First, Fifth, and Fourteenth

Amendments to the United States Constitution directly and proximately resulted in the violations of Plaintiffs' rights implemented in her official capacity by DEFENDANT Williams.

53.     Defendant Jail Oversight Board, which is organized and incorporated under the laws of the Commonwealth of Pennsylvania and is subject thereto, was aware that policies and procedures for the operation and implementation of the George W. Hill Correctional Facility were necessary and required as a matter of law.

54.     Defendant Jail Oversight Board was deliberately indifferent to the lack of these policies, as evidenced by the utter lack of discussion, inquiry, investigation, or oversight directed at DEFENDANT Williams and the lack of discussion in DEFENDANT Williams's reports to the County and to the Jail Oversight Board.

55.     The lack of adequate hiring and staffing policies and practices was known by Defendant Jail Oversight Board but was not corrected despite the probability of harm to the constitutional rights of Corrections Officers at the George W. Hill Correctional Facility likely being infringed by the lack thereof.

56.     Absent policies to ensure the constitutional rights, including due process under the Fifth and Fourteenth Amendments to the United States Constitution, and the associational, free speech, and rights to petition the government under the First Amendment to the United States Constitution, these harms are likely to recur and continue (as evidenced by the most recent batch of Corrections Officers at the George W. Hill Correctional Facility who were terminated absent a Loudermill hearing or any departmental due process whatsoever as recently as the last quarter of 2023).

57.     DEFENDANT Williams was empowered by DEFENDANT Delaware County and Defendant Jail Oversight Board to administer the policies, goals, and authority of DEFENDANT Delaware County and Defendant Jail Oversight Board.

58.     DEFENDANT Williams, acting in her official capacity, made the deliberate choices to follow a course of action as it related to terminating without due process Correctional Officers who were in good standing prior to Delaware County re-assuming administration of the operations of the George W. Hill Correctional Facility.

59.     DEFENDANT Williams, acting in her official capacity, made the deliberate choices to follow a course of action as it related to refusing to honor the directive of DCPEIU Members regarding the taking of dues and remitting same to DCPEIU.

60.     DEFENDANT Williams, acting in her official capacity, made the deliberate choices to follow a course of action as it related to refusing entry to represent Members of DCPEIU to Plaintiffs Kwaning and Gwaku.

61.     DEFENDANT Marquette was complicit in enacting Defendant Williams' unlawful policies and procedures.

62.     DEFENDANT Williams instructed her subordinates and conspired with them to prepare a list of individuals which amounted to a "hit list" which included Plaintiffs, and in particular Plaintiffs Gwaku and Kwaning, singling those individuals out with regard to Defendants terminating the without due process.

### CLAIMS FOR RELIEF

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## Count I
## 42 U.S.C. §1983
## Violation of Fifth and Fourteenth Amendments - Due Process
### *Plaintiff v. All Defendants*

63.     Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

64.     The Due Process Clause "protects against deprivation of federal- or state-created protected interests without constitutionally adequate process, such as notice and the opportunity to be heard (procedural due process)." *Jones v. Twp. of Middletown*, No. 11-cv-564, 2011 U.S. Dist. LEXIS 81578, 2011 WL 3157143, at *3 (E.D. Pa. July 26, 2011) (*citing Daniels v. Williams*, 474 U.S. 327, 339, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986) (Stevens, J., concurring)). "The Due Process Clause [also] protects an individual from state deprivation of constitutionally created rights for reasons so arbitrary, or by conduct so egregious, that it 'shocks the conscience,' regardless of the adequacy of the procedures used (substantive due process)," *Jones*, 2011 U.S. Dist. LEXIS 81578, 2011 WL 3157143, at *3 (*citing Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006)).

65.     The Court must determine whether the plaintiff asserts procedural or substantive due process claims because "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir. 1989).

66.     "The Fourteenth Amendment of the Constitution forbids a state from depriving persons of life, liberty, or property without due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). "When a plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process, [courts] employ the familiar two-stage analysis, inquiring (1) whether the asserted individual interests are encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." *Id*. (*quoting Robb v. City of Phila*., 733 F.2d 286, 292 (3d Cir. 1984)) (internal quotation marks and citation omitted). "[T]o have a property interest in a benefit that is protected by procedural due process, 'a person clearly must . . . have a legitimate claim of entitlement to it.'" Robb, 733 F.2d at 292 (*quoting Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). Property interests "are created and their dimensions are defined by existing rules or understandings that stern from an independent source such as state law." *Roth*, 408 U.S. at 577.

67.     Plaintiffs Kwaning, Gwaku, Demonfonte, Branham, Lofton, Maanneh, Diallo, Henry, Hymann, Amouzou, Veney, Savage, Sevor, Robinson, and Wiedman had a property interest their jobs which were privately-subcontracted public jobs since there was a "just cause clause" in their contract with the private subcontractor. *Atterbury v. United States Marshals Serv*., 941 F.3d 56 (2d Cir. 2019).

68.     Plaintiffs Kwaning, Gwaku, Demonfonte, Branham, Lofton, Maanneh, Diallo, Henry, Hymann, Amouzou, Veney, Savage, Sevor, Robinson, and Wiedman's procedural due process rights were infringed by Defendants because Plaintiffs possessed a protected property interest in continued public employment despite GEO group being a private subcontractor of

Delaware County's public law enforcement and corrections duties at George W. Hill Correctional Facility.

69.     By Defendants' failure to afford Plaintiffs Kwaning, Gwaku, Demonfonte, Branham, Lofton, Maanneh, Diallo, Henry, Hymann, Amouzou, Veney, Savage, Sevor, Robinson, and Wiedman's procedural due process rights by summarily terminating them without notice, hearing, and/or opportunity to be heard, Defendants have violated Plaintffs' due process rights under the 5th and 14th Amendments to the United States Constitution.

70.     Kwaning, Gwaku, Demonfonte, Branham, Lofton, Maanneh, Diallo, Henry, Hymann, Amouzou, Veney, Savage, Sevor, Robinson, and Wiedman's substantive due process rights were infringed by Defendants because Plaintiff's Members possessed a protected property interest in their jobs and Defendants' conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Kaucher v. Cty. of Bucks*, 455 F.3d 418 at 425 (3d Cir. 2006).

71.     Defendants utterly disregarded the Constitution of the United States, federal, state, and common law regarding contractual interpretation in public employment in unilaterally and summarily repudiating the contractual provisions and ignoring the property interest possessed by Plaintiff's Members when Defendants unilaterally and summarily, without notice and opportunity to be heard, terminated Plaintiff's Members, who were employees in good standing of GEO.

72.     Plaintiffs and Plaintiff's Members incurred financial, reputational, and psychological harm as a direct result of Defendants' unconstitutional and unlawful actions.

73.     As a direct and proximate result of Defendants' willful unlawful termination of Plaintiff's Members employment Plaintiffs Members have suffered and continue to suffer emotional and financial harm.

74.     While acting under the color of the law, Defendants violated Plaintiffs and Plaintiff's Members constitutional rights by unilaterally and without due process terminating Plaintiffs, which resulted in injury to Plaintiffs and their Members.

75.     Defendants' actions violated the constitutional rights guaranteed to Plaintiffs and their Members under the Fifth and Fourteenth Amendments.

76.     196.     Defendants' actions were not taken in good-faith and were in violation of clearly established state and federal law and the Constitution of the United States.

77.     Defendants' actions were egregious, unnecessary, unreasonable, unlawful, and unjustified.

78.     As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs and their Members have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

79.     Because Defendants' and possibly other employees, agents, and/or representatives of Defendants, were motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiffs and their Members an award of punitive damages is appropriate to the fullest extent permitted by law.

**<u>Count II</u>**
**42 U.S.C. §1983**
**Violation of First Amendment - Free Speech - Right to Petition**
***Plaintiff v. All Defendants***

80.     Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

81.     "At its core, the right of petition protects a personal right to bring complaints about public policy directly to officers of the government." *Ferrone v. Onorato*, 298 F. App'x 190, 193 (3d Cir. 2008)(*quoting* Ronald J. Krotoszynski & Clint A. Carpenter, The Return of Seditious Libel, 55 UCLA L. Rev. 1239, 1246 (2008)).

82.     To establish a claim under the petition clause, a Plaintiff must show that the Defendants acted "with reckless or intentional indifference to his constitutional rights"; mere negligence will not suffice. *Woods v. Lemonds*, 804 F. Supp. 1106, 1109 (E.D. Mo. 1992), *aff'd*, 991 F.2d 802 (8th Cir. 1993) (table); *Ferrone v. Onorato*, 298 F. App'x 190, 193 (3d Cir. 2008).

83.     Defendants, and in particular Defendant Williams, were aware, or should have been aware, that Defendant Williams' actions in unilaterally repudiating the contract and its protections ran directly contrary to the Constitution of the United States, federal, state, and common law.

84.     Defendants, and in particular Defendant Williams, were aware, or should have been aware, that Defendant Williams' actions in unilaterally terminating Plaintiff's Members absent due process of law ran directly contrary to the Constitution of the United States, federal, state, and common law.

85.     By unilaterally terminating Plaintiff's Members, Defendants deprived Plaintiffs and their Members of their individual personal rights to bring complaints about public policy directly to officers of the government.

86.     Plaintiffs and their Members incurred financial, reputational, and psychological harm as a direct result of Defendants' unconstitutional and unlawful actions.

87.     While acting under the color of the law, Defendants violated Plaintiffs' and their Members' constitutional rights by unilaterally ignoring Plaintiffs' Rights to Petition by terminating Plaintiff's Members which resulted in injury to Plaintiffs and their Members.

88.     Defendants' actions violated the constitutional rights guaranteed to Plaintiffs and their Members under the First Amendment.

89.     196.   Defendants' actions were not taken in good-faith and were in violation of clearly established state and federal law and the Constitution of the United States.

90.     Defendants' actions were egregious, unnecessary, unreasonable, unlawful, and unjustified.

91.     As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs and their Members have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

92.     Because Defendants' and possibly other employees, agents, and/or representatives of Defendants, were motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiffs and their Members an award of punitive damages is appropriate to the fullest extent permitted by law.

**Count III**
**42 U.S.C. §1983**
**Violation of First Amendment - Right to Petition**
*Plaintiffs v. All Defendants*

155.    Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

156.    "At its core, the right of petition protects a personal right to bring complaints about public policy directly to officers of the government." *Ferrone v. Onorato*, 298 F. App'x 190, 193

(3d Cir. 2008)(*quoting* Ronald J. Krotoszynski & Clint A. Carpenter, The Return of Seditious Libel, 55 UCLA L. Rev. 1239, 1246 (2008)).

157.   To establish a claim under the petition clause, a Plaintiff must show that the Defendants acted "with reckless or intentional indifference to his constitutional rights"; mere negligence will not suffice. *Woods v. Lemonds*, 804 F. Supp. 1106, 1109 (E.D. Mo. 1992), *aff'd*, 991 F.2d 802 (8th Cir. 1993) (table); *Ferrone v. Onorato*, 298 F. App'x 190, 193 (3d Cir. 2008).

158.   Union representatives have both freedom of association and freedom to petition rights. *See Palardy v. Twp. of Millburn*, 906 F.3d 76 (3d Cir. 2018).

159.   Defendants, and in particular Defendant Williams, were aware, or should have been aware, that Defendant Williams' actions in unilaterally repudiating the contract and its protections ran directly contrary to the Constitution of the United States, federal, state, and common law.

160.   Defendants, and in particular Defendant Williams, were aware, or should have been aware, that Defendant Williams' actions in unilaterally preventing Kwaning and Gwaku from representing Union members in disciplinary hearings, being present on jail grounds, and engaging in other activities associated with Kwaning and Gwaku's Union positions and responsibilities ran directly contrary to the Constitution of the United States, federal, state, and common law.

161.   Plaintiffs and their Members incurred financial, reputational, and psychological harm as a direct result of Defendants' unconstitutional and unlawful actions.

162.   While acting under the color of the law, Defendants violated Kwaning and Gwaku's constitutional rights by unilaterally ignoring Plaintiff's and their Members Rights to Petition by refusing to allow Kwaning and Gwaku to conduct Union business and rep, which resulted in injury to Plaintiffs and their Members.

163.    Defendants' actions violated the constitutional rights guaranteed to Kwaning and Gwaku under the First Amendment.

164.    196.    Defendants' actions were not taken in good-faith and were in violation of clearly established state and federal law and the Constitution of the United States.

165.    Defendants' actions were egregious, unnecessary, unreasonable, unlawful, and unjustified.

166.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs and their Members have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

167.    Because Defendants' and possibly other employees, agents, and/or representatives of Defendants, were motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiffs and their Members an award of punitive damages is appropriate to the fullest extent permitted by law.

**Count IV**
**42 U.S.C. §1983**
**Violation of First Amendment - Freedom of Association**
***Plaintiffs v. All Defendants***

168.    Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

169.    A 42 U.S.C.S. § 1983 retaliation claim asserting a violation of the right to freedom of association requires a showing that the Plaintiffs and their Members were engaged in

constitutionally protected conduct, which conduct was a substantial' or motivating factor in the government employer's adverse employment decision.

170.    Union representatives have both freedom of association and freedom to petition rights. Palardy v. Twp. of Millburn, 906 F.3d 76 (3d Cir. 2018).

171.    Defendants, and in particular Defendant Williams, were aware, or should have been aware, that Defendant Williams' actions in unilaterally repudiating the contract and its protections ran directly contrary to the Constitution of the United States, federal, state, and common law.

172.    Defendants, and in particular Defendant Williams, were aware, or should have been aware, that Defendant Williams' actions in unilaterally preventing Kwaning and Gwaku from representing Union members in disciplinary hearings, being present on jail grounds, and engaging in other activities associated with Kwaning and Gwaku's Union positions and responsibilities ran directly contrary to the Constitution of the United States, federal, state, and common law.

173.    Plaintiffs incurred financial, reputational, and psychological harm as a direct result of Defendants' unconstitutional and unlawful actions.

174.    While acting under the color of the law, Defendants violated Kwaning and Gwaku's constitutional rights by unilaterally ignoring Plaintiffs and their Members' Rights to Petition by refusing to allow Kwaning and Gwaku to conduct Union business and rep, which resulted in injury to Plaintiffs and their Members.

175.    Defendants' actions violated the constitutional rights guaranteed to Kwaning and Gwaku under the First Amendment.

176.    Defendants' actions were not taken in good-faith and were in violation of clearly established state and federal law and the Constitution of the United States.

177.    Defendants' actions were egregious, unnecessary, unreasonable, unlawful, and unjustified.

178.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs and their Members have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

179.    Because Defendants' and possibly other employees, agents, and/or representatives of Defendants, were motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiffs and their Members an award of punitive damages is appropriate to the fullest extent permitted by law.

**Count V**
**Section 1983 -- Retaliation – First Amendment**
*Plaintiffs v. All Defendants*

180.    Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

181.    Defendants terminated Kwaning and Gwaku.

182.    Defendants terminated Kwaning and Gwaku because of their representation of DCPEIU Members and because of Kwaning and Gwaku's membership in the Union.

183.    Kwaning and Gwaku's protected activity was a motivating factor in Defendants' decision to discharge Kwaning and Gwaku.

184.    Plaintiffs and their Members incurred financial, reputational, and psychological harm as a direct result of Defendants' unconstitutional and unlawful actions.

185.    While acting under the color of the law, Defendants violated Kwaning and Gwaku's constitutional rights by retaliating against Plaintiffs and their Members for protected activity under the First Amendment which resulted in injury to Plaintiffs and their Members.

186.    Defendants' retaliatory actions violated the constitutional rights guaranteed to Kwaning and Gwaku under the First Amendment.

187.    196.    Defendants' actions were not taken in good-faith and were in violation of clearly established state and federal law and the Constitution of the United States.

188.    Defendants' actions were egregious, unnecessary, unreasonable, unlawful, and unjustified.

189.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs and their Members have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

190.    Because Defendants' and possibly other employees, agents, and/or representatives of Defendants, were motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiffs and their Members an award of punitive damages is appropriate to the fullest extent permitted by law.

**Count VI**
**42 U.S.C. §1983**
*Monell* **Liability.**

***Plaintiffs v. Delaware County Pennsylvania, Jail Oversight Board of Delaware County
Pennsylvania, George W. Hill Correctional Facility***

191.    Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

192.    Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Case* 1:20-cv-00135-TSK   Document 19   Filed 01/15/21   Page 17 of 22   PageID #: 191 18 Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under *Monell*. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

193.    Plaintiffs and their Members incurred financial, reputational, and psychological harm as a direct result of Defendants' unconstitutional and unlawful actions.

194.    While acting under the color of the law, Defendants violated Plaintiff's and their Members' constitutional rights by condoning, failing to supervise, and ratifying the actions of Defendant Williams.

195.    Defendants' actions violated the constitutional rights guaranteed to Plaintiffs and their Members under the First, Fifth, and Fourteenth Amendments.

196.    Defendants' actions were not taken in good-faith and were in violation of clearly established state and federal law and the Constitution of the United States.

197.    Defendants' actions were egregious, unnecessary, unreasonable, unlawful, and unjustified.

198.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs and their Members have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

199.    Because Defendants' and possibly other employees, agents, and/or representatives of Defendants, were motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiffs and their Members an award of punitive damages is appropriate to the fullest extent permitted by law.

### Count VII
### Intentional Infliction of Emotional Distress
### *Plaintiffs v. Kevin Madden, Laura Williams, Cheyenne Marquette*

200.    Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

201.    Defendants engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

202.    Defendants acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from Defendants' outrageous conduct.

203.    Defendants' actions caused Plaintiff's Members to suffer severe emotional distress and other injury.

204.    The emotional distress Plaintiff's Members experienced was so severe, no reasonable person could be expected to endure it.

205.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs and their Members have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

206.    The actions of Defendants against the Plaintiffs and their Members were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

**Count VIII**
**Conspiracy**
***Plaintiffs v. Kevin Madden, Laura Williams, Cheyenne Marquette***

207.    Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

208.    Defendants Madden, Williams, Marquette, and others under their control combined efforts in selecting the individuals to terminate absent due process of law, which included Plaintiff's Members.

209.    This combination of efforts of Defendants Madden, Williams, Marquette, and others under their control were undertaken to further the unlawful actions of terminating Plaintiff's Members absent due process of law.

210.    This combination of efforts of Defendants Madden, Williams, Marquette, and others under their control employed unlawful means in depriving Plaintiff's Members of due process of law.

211.    This combination of efforts of Defendants were made by one of more of Defendants Madden, Williams, Marquette, and others under their control pursuant to the objective of depriving Plaintiff's Members their due process rights in terminating their employment.

212.    This combination of efforts of Defendants Madden, Williams, Marquette, and others under their control resulted in damage to Plaintiff's Members including but not limited to their termination from employment and damage to their reputation and standing in the community.

213.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs and their Members have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

214.    The actions of Defendants against the Plaintiffs and their Members were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

## JURY DEMAND

PLAINTIFF demands a jury trial on all issues to be tried.

## DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to PLAINTIFF's Members' employment, to their potential claims, their claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images,

40

cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFFS demand judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, equitable damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursement of action under 42 U.S.C. §1988 and otherwise, and for such other relief as the Court deems equitable, just, and proper.

Respectfully submitted,

Date: <u>March 21, 2024</u>

**DEREK SMITH LAW GROUP, PLLC**
By: <u>*/s/ Timothy J. Prol, Esq.*</u>
Timothy J. Prol, Esq.
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
Phone: (215) 391-4790
tim@dereksmithlaw.com
Attorneys for Plaintiffs